BOOTH v. BUNCE et al.

A creditor in good faith of a manufacturing corporation which was organized, and its business conducted, for the purpose of defrauding the creditors of its president, has no priority of claim to property in the possession of such corporation over a creditor of the president.

The purchaser of goods of the corporation under execution against its president, for his private debt, gets a good title as against a subsequent execution against the corporation.

APPEAL from the Supreme Court. Action for taking a steam-engine, the property of the plaintiff. Upon the trial it appeared that, on the 1st day of January, 1855, William Montgomery and one Garrabrant made their promissory notes for two thousand dollars, the consideration for which was the sale to them by one Reeve, the payee, of his interest in a machine-shop and its business, which, up to that time, had been carried on by the three, at Yonkers, in Westchester county. The plaintiff, having become the owner of these notes, recovered judgment thereon in December, 1859. Under the execution upon this judgment he purchased the steam-engine in question, which was then in the machine-shop at Yonkers. The plaintiff removed the engine to the city of New York, where some two months afterwards it was seized and taken away by the sheriff, at the instance of the defendants, under an execution upon a judgment recovered by them against the New York

Steam Saw-Mill and Machine Company. It was shown that this was a corporation organized under the general law of October 30, 1857. Montgomery, the president of the Company, and one Lund, who was then in partnership with him, were trustees of the corporation. They owned the machine-shop, machinery and stock at Yonkers, which they transferred to the Company at the time of its formation. The plaintiff offered to prove that the corporation was organized to defraud the creditors of William Montgomery & Co., and that the business was carried on in the name of said Machine Company for the like purpose. The evidence was excluded, and the plaintiff took an exception. The court dismissed the complaint, and the judgment having been affirmed at general term in the second district, the plaintiff appealed to this court.

*R. W. Van Pelt*, for the appellant.

*Andrew Thompson*, for the respondents.

SUTHERLAND, J. The principle plainly announced in the opinions delivered at the general term, on both occasions when this case was before them, is: Assuming that the plaintiff was a creditor of William Montgomery, or of William Montgomery & Co., at the time the New York Steam Saw-Mill and Machine Company was formally organized as a corporation under the statute; and that it was so organized, and the business carried on in its name, to defraud the creditors of William Montgomery, or of William Montgomery & Co.; yet that Bunce & Co. had the best or superior right to the engine in question, or to sell it under their judgment and execution, because the corporation was regularly organized, and they became its *bona fide* creditors without notice of the fraudulent purpose for which it was organized, the property of William Montgomery, or of William Montgomery & Co., transferred to it, and the business subsequently carried on in its name.

It does not appear to have been doubted, by either of the learned judges who delivered the opinions at general term, if

SMITH.—VOL. X. 75

the corporation was organized and the business subsequently carried on in its name with the fraudulent purpose aforesaid, that such organization or proceeding was absolutely void as to the plaintiff, and that he had a right, at the peril or risk of being able to establish such fraudulent purpose, to sell the engine in question, or, at least, Montgomery's interest in it, under his execution; and that his prior sale and purchase under his execution gave him a title as against any creditor of William Montgomery, or of William Montgomery & Co., and would have given him a superior title as against Bunce & Co., had they dealt with and given credit to the corporation with notice of such fraudulent purpose. But the principle assumed in these opinions would appear to be, that the *bona fide* creditors of a corporation, organized, and the business of which is carried on by A. B. in its name, to defraud his creditors, have a right to property held by him in the name of the corporation superior to that of a defrauded creditor of A. B.; that the mere fact of the regular organization of the corporation gives its *bona fide* creditors a lien on, or a right to, such property, which no superior diligence of a defrauded creditor, in enforcing the payment of his debt by judgment and execution, can deprive them of.

No authority is cited in support of this principle, and we do not see any ground or reason for enforcing it in this case.

Assuming, in this case, that the corporation was organized, the property of William Montgomery, or of William Montgomery & Co., (we do not mean the particular property in question,) transferred to it, and the business afterwards carried on in its name, with the fraudulent purpose of preventing the plaintiff enforcing or collecting his debt, and that Bunce & Co. were *bona fide* creditors of the corporation, we think that, prior to the levy and sale under the plaintiff's execution, the equities of the plaintiff and of Bunce & Co. were equal.

There is nothing in the case to show that Bunce & Co. gave credit to the corporation because it was a corporation, or in form and name a corporation. From aught that appears, Bunce & Co. would have as readily have given the credit,

had the business been carried on in the name of William Montgomery, or of William Montgomery & Co. Indeed, it appears that, prior to the formal organization of the corporation, Bunce & Co. had dealt with William Montgomery & Co., and given William Montgomery & Co. credit for a considerable sum.

The question in this case is, not what disposition should or would have been made of the property held in the name of the corporation in a proceeding against it as insolvent. The question is between judgment-creditors enforcing, or trying to enforce, the payment of their judgments at law, by execution. The equities of the parties being equal, why does not the maxim, *Qui prior est in tempore, portior est in jure,* apply?

The plaintiff first levied on and sold the property in question. He did this, claiming that the organization of the corporation and the carrying on of the business in its name was fraudulent and void as to him. He sold it at the peril and risk of being able to prove the fraud; but if he can prove it, why does not his superior diligence, in accordance with the maxim cited, give him a good title?

The judgment of the Supreme Court should be reversed, and a new trial ordered.

Judgment reversed, and new trial ordered.