## PERSSE & BROOKS PAPER-WORKS *a.* WILLETT.

*New York Superior Court; General Term, July,* 1863.

EVIDENCE. — PRINTED LAWS. — DEFECTIVE INCORPORATION. — FRAUD IN ORGANIZING AND ASSIGNING TO A CORPORATION. — WITNESS.

A charter of a private corporation, enacted by the legislature of another State, is a law within the meaning of section 426 of the Code of Procedure, which declares that "printed copies in volumes of statutes, code, or other written law" of other States, shall be admissible in evidence in the courts of this State.

Alleged defects in the proceedings to organize a corporation are not available to defeat an action brought by the corporation for a trespass in wrongfully taking property from their possession.

A transfer, by a partnership, of the partnership property, to a corporation formed by the partners for the purpose, in payment for which the partners take the stock of the corporation in their individual names, is not *per se* fraudulent as to the creditors of the partnership.

The mere fact that partnership property is transferred, in exchange for other property, which is transferred to the members of the firm individually, does not make the transfer *per se* fraudulent ; nor is it conclusive evidence of intent to defraud or delay the partnership creditors, if the substituted property is as valuable as that sold, as accessible to process, and as readily convertible into money by judicial proceedings. The mere fact that the title to the substituted property is taken by the members of the firm severally, can only be important in connection with other evidence tending to show a fraudulent intent.

Upon the question whether the act of partners, in procuring a statute incorporating them and their associates, and in transferring their property to the cor-

Persse & Brooks Paper-works *a.* Willett.

poration so formed, was fraudulent as against creditors, it is admissible to prove that, after the firm had made an assignment for the benefit of creditors, one of their number, acting as the chief officer of the alleged corporation, and having, as such, the control of the property, in the presence of the assignee and of the servants of the alleged corporation, assented to the assignee's taking contról of the property in virtue of his right as assignee.

Upon the question of the good faith of a transfer of their property, by debtors, to a corporation of which they were the officers, their acts and declarations, subsequent to the transfer and while in possession, respecting the use and disposal of it, tending to show that they treated it as if still their own, are admissible.

After testimony has been elicited from a witness, on an examination by either party, which would require the submission to the jury of the question of fraudulent intent in an assignment made by such witness, it is proper for the adverse party to ask whether the act was done with fraudulent intent; and in answer to such question, it is proper for the witness to state the particular reasons which induced the act, and that he communicated those reasons to his creditors before the act.

In an action by a corporation against a sheriff for levying on its property under process against the persons who composed the corporation, the defence was that such persons had been. as partners, owners of the property, and that, on failing, they formed the corporation and transferred the property to it with intent to defraud their creditors.

*Held*, 1. That evidence that, between the time of the transfer and the time of the levy, the corporation made profits in the business, and that before and at the time of the failure of the firm there was a panic in the market, was admìssible; but the admission of such evidence did not make it competent to inquire as to the profits of the córporation up to the time of trial.

2. That a witness, having testified that he was in the employment of the firm as superintendent, for a period extending beyond the time of the transfer, might be asked, on cross-examination, if he was superintendent under the corporation.

3. That entries made in the firm's books, by others than the partners, and after they had made a general assignment for benefit of creditors, and no longer had control of the books, were not admissible.

Upon the question of the solvency of the firm in such a case, it is not competent to ask a book-keeper if the books show whether they were solvent.

Evidence is not admissible that the paper of the firm was in the hands of street brokers, or of what it was offered to be sold for, or that such offers induced creditors to recall loans made to the firm.

Evidence of admissions of the firm that paper was issued by them to be sold or discounted at usury, is only admissible if such declarations were made before the alleged fraudulent transfer.

This was an appeal from an order of the special term denying a motion for a new trial, and from a judgment entered on a verdict in favor of the plaintiff for $13,173.52.

The action was brought against the defendant, the sheriff of the county of New York, to recover damages for the taking

and conversion, in April, 1858, of chattels alleged to belong to the plaintiff, a corporation created by the laws of the State of Connecticut.

The taking was justified under several judgments and executions in favor of creditors of the firm of "Persse & Brooks," composed of Dudley Persse, Horace Brooks, and Daniel H. Magie.

The cause was tried before Chief-justice BOSWORTH and a jury, commencing on the 26th March, 1862.

The contest, on the trial, related to the validity of the creation of the corporation, plaintiff, composed of the members of the firm of "Persse & Brooks" and one of their agents, and of alleged transfers of property to it, by the firm, which the defendant claimed to be fraudulent as against the creditors of "Persse & Brooks."

It appeared that, for some years prior to August 1, 1857, the firm of Persse & Brooks had been engaged in manufacturing paper, and were owners of extensive mills in Connecticut.

The plaintiff claimed that, in May, 1857, the same persons who composed the firm of "Persse & Brooks," viz., Dudley Persse, Horace Brooks, and Daniel H. Magie, were by act of the legislature of Connecticut, created a corporation under the name of "The Persse & Brooks Paper-works," to be organized, etc., by opening books for subscription to its capital stock, to the amount of $600,000, with power to increase, etc., and to organize when $300,000 of stock was taken, the shares being $100 each, to be managed by not less than three directors.

That, on the 1st day of August, 1857, the proposed corporation was organized, the subscriptions to the stock being made at the same time as follows :

Dudley Persse...................2,195 shares, or $219,500
Horace Brooks...................2,195 " " 219,500
Daniel H. Magie, by his attorney,
    Horace Brooks, under a verbal
    power........................ 100 " " 10,000
Theophilus B. Persse, a brother of
    Dudley Persse, and one of the em-
    ployees of the firm........... 10 " " 1,000
                    Making...........4,500 shares, or $450,000

That at the same time Dudley Persse and Horace Brooks conveyed to the alleged corporation all their mills, machinery, and dwelling-houses at Windsor Locks, for an assumed consideration of $450,000, as payment of their subscriptions for the stock, and the stock was issued in the several individual names of the partners in the relative proportions and numbers above stated.

That Dudley Persse, Horace Brooks, and T. B. Persse, elected Dudley Persse, Horace Brooks, and Daniel H. Magie, directors of the alleged corporation.

And Horace Brooks and Dudley Persse elected Horace Brooks, president; Dudley Persse, treasurer; and T. B. Persse, secretary.

It appeared that Magie never paid any thing for the stock which was issued to him, and T. B. Persse only subscribed because the parties contemplated his continuing to superintend the works; and though he gave his note, he never paid it, but got it back.

Salaries were provided—for Brooks and Persse $5,000 per annum each, and Magie $2,000.

The plaintiff also claimed that, pursuant to an agreement then made, the firm of Persse & Brooks, on or about the 1st of September ensuing, transferred to the alleged corporation the rags, stock, and materials to be manufactured, and other personal property on hand, to the amount of $126,331.96, at a credit of twelve months, including paper on hand in the city of New York; and that, after the 1st of September, the mills were run for the corporation, and the firm of Persse & Brooks were only agents buying for the corporation, and selling paper to account therefor to the corporation. On the 22d of September, 1857, the firm of " Persse & Brooks" failed, and made an assignment for the benefit of creditors, to George J. Forrest, owing at that time $588,180.02, having partnership assets to the amount of $206,923.87.

The defendant claimed that there was never any legal organization of the alleged corporation.

That the scheme or plan of creating and organizing such an apparent legal entity was a fraudulent device gotten up by Persse & Brooks, to convert their property into a form which would hinder, delay, and keep off their creditors, and with a

view either to avoid the payment of their debts or to compel the creditors to take stock therefor.

That the design of the pretended organization was as last stated, and with the further fraudulent purpose to retain the actual control of the property, under color of being officers and directors, and to secure to themselves large salaries, notwithstanding their insolvency.

That the transfer of the property in Connecticut was with the purposes aforesaid, and to place the property conveyed beyond the reach of creditors.

That the alleged transfer of $126,331.96 of paper, materials, &c., in New York and Connecticut—if any such form or semblance of transfer was made—was made to hinder, delay, and defraud their creditors. And also that, being upon credit, it necessarily had the effect to delay.

And hence the defendant claimed that the levy made by him upon certain of the paper, &c., in New York, under executions against the partners, was lawful.

Upon the trial, to prove the charter of the plaintiffs, their counsel offered in evidence a printed volume of the statutes of Connecticut containing it, entitled, "Resolutions and Private Acts of the General Assembly of the State of Connecticut;" to which the defendant's counsel objected, on the ground that the book offered was not a volume of laws, entitling it to be read in evidence under the statutes or laws of this State. The court overruled the objection, and the defendant's counsel excepted.

In the course of the examination of Thomas Mickle, a witness for the defendant, who had testified that he had been in the employment of the firm, as superintendent of their mills, from 1855 to the end of October, 1857, the counsel for the defendant offered to prove (by a witness to be afterwards called) that Forrest (the assignee of the firm) came to the mills with Horace Brooks at the time of the failure of the firm, and that Brooks and Forrest stated facts and gave instructions that showed that the firm of Persse and Brooks owned and controlled the works and the property there, and that the superintendents and agents of the alleged corporation submitted to the instructions, and acquiesced therein; and also to show what was the actual conversation which T. B. Persse (a prior witness) had testified to.

The plaintiff's counsel objected to this as incompetent. The court sustained the objection, not that it was not in the proper order of proof, but not competent evidence, and the defendant's counsel excepted.

The defendant's counsel then further offered to prove that Forrest and Horace Brooks went to the mills on September 23, 1857, from New York; that they called T. B. Persse and the witness into one of the rooms in the mills, and in the presence of Mr. Barnes, as counsel for the parties, Forrest stated in their presence to the superintendents that every thing there had been assigned to him, and that thereafter the mills would be run in his name and on his account; that Brooks assented to the statement, and that the superintendents continued the works under that instruction as long as the witness stayed there—that is, until the latter part of October, 1857—and without that direction being countermanded to the knowledge of the witness. The plaintiff's counsel objected to this, and the court sustained the objection, unless it should be also proved that Persse and Magie knew of and assented thereto; and the defendant's counsel excepted.

John F. Zebley, also a witness for defendant, was questioned in reference to a conversation he had with Mr. Brooks shortly after the failure of the firm; and the counsel for the defendant offered to prove by this witness that Brooks told him in that conversation that Persse & Brooks were running the mills under an act of incorporation, and intended to shield themselves by it—that they were then working up their rags to pay their confidentials. To this the plaintiff's counsel objected; the court sustained the objection, and the counsel for the defendant excepted.

James H. Benedict, another witness, was also asked by the defendant's counsel to state a conversation had by him with Mr. Persse several months after the failure of the firm. This evidence the counsel stated that he offered in order to show that in negotiations with the witness for the purchase of rags to be used at the mills, Mr. Persse made statements, as part of such negotiations, regarding the purposes to which the paper to be made therefrom was to be applied, which bore upon the character of the business carried on at the store and at the mills, and the interest of the parties therein. This evidence

was also excluded under an exception. A question whether the witness observed any change during 1857, in the appearance of the store or the manner of doing business, was likewise excluded.

Mr. Brooks, one of the firm, having been examined and cross-examined as a witness, the plaintiff's counsel, upon a redirect examination, inquired as to the reasons for the incorporation; and asked: Was there or not any motive to defraud creditors?

This question was objected to by defendant's counsel. The objection was overruled, and the defendant's counsel excepted.

A. I never dreamt of defrauding creditors. Our credit at that time was very good. We had no difficulty in buying any amount of goods we had occasion to purchase on credit. We were solvent at that time. There was a petition presented by us to the legislature of Connecticut for this incorporation.

This witness was permitted to testify that up to July, 1858, the corporation made profits; and upon the examination of Charles H. Dexter as to the profits of the business, the court excluded any inquiry, whether up to the time of the trial the corporation made any profits or not, saying that the defendant might go into the inquiry, whether during the period that Mr. Brooks testified to they made any profits or not. To which exclusion the defendant's counsel excepted.

Benjamin Galbraith, a witness for defendant, was asked: Do you know what Persse & Brooks' notes were offered for by them in the spring or summer of 1857?

A. They never offered any of their notes to me.

Q. Did any one on their behalf?

A. I was offered their notes, but whether it was on their behalf or not I cannot tell.

Q. I ask what the offer was?

This question was objected to by the plaintiff's counsel. The court sustained the objection, but stated that he would allow proof of what it was offered for with their knowledge, and the defendant's counsel excepted.

The same witness, having testified that he had, as agent for Mr. Bennett, collected from Persse & Brooks two sums of $5,000 and $20,000 respectively, due Mr. Bennett, was asked:

How did Mr. Bennett come to make a draft on Persse & Brooks for his money at the time he did ?

This question was objected to by the plaintiff's counsel. The court sustained the objection, and the defendant's counsel excepted.

The defendant's counsel thereupon offered to prove that Mr. Bennett was induced to withdraw his funds in the hands of Persse & Brooks in consequence of offers to sell to him Persse & Brooks' notes made in March, 1857. This was objected to by the plaintiff's counsel. The court sustained the objection, and the defendant's counsel excepted.

He was subsequently asked: Did you apply the payment of the $20,000 received of Persse & Brooks to the payment of property of Mr. Bennett at Washington Heights?

This question was objected to by the defendant's counsel. The court overruled the objection, and the defendant's counsel excepted.

A. I made a cash payment on that property with the $20,000 that I drew from Persse & Brooks, and I drew it for that purpose.

In the course of the trial, the counsel for the defendant also offered to read in evidence the answer of Persse & Brooks, as defendants in an action against them on sundry promissory notes, dated in June and July, 1857, which answer was sworn to by Horace Brooks, February 13, 1858 ; and set up that such notes were issued by them to raise money, and that they were discounted at usurious rates of interest. The court excluded this evidence, unless it suggested that it was in conflict with what Brooks stated ; and the defendant's counsel excepted.

In charging the jury, the court instructed them that " if the intent and object of the creation of the corporation, and of the transfer of the property to it, were to use the corporation as a shield or cover, and place the property so transferred beyond the reach of the creditors of Persse & Brooks, by ordinary legal process, then the title is invalidated by transactions between Persse & Brooks and the corporation, had after its organization.

" In determining whether this was the intent and object of the creation of the corporation, and of the transfers of the property to it, made on the 1st of August and the 1st of Sep-

tember, 1857, you must place yourselves back to that period of time, and view things as you believe from the evidence the parties to the transactions then viewed them, and determine their intent from what they did, and the manner in which they acted, and the knowledge they then had, with such additional light as the subsequent transactions allowed to be proved shed upon this question and that intent.

"The transfer of the real property in Connecticut, and the mere fact of taking stock therefor, in the individual names of the partners, do not furnish conclusive evidence of a fraudulent intent. If on a conveyance of property of the firm, valued at $450,000, the stock received in payment therefor was taken in the individual names of the partners, with a view to convert it into individual property, to be used and disposed of as such, it would be *per se* fraudulent and void as to the creditors of the firm of Persse & Brooks.

" But if the members of that firm honestly believed themselves to be solvent, and did not contemplate a failure or suspension, and had no actual fraudulent intent in organizing the corporation, or in making the transfers of property, or in receiving a transfer of the stock in their individual names, and had no intent nor thought of withdrawing the stock from the firm's assets, then the mere fact that the stock was taken in the individual names of the partners would not make the transfers of the property fraudulent and void as to the creditors of Persse & Brooks.

" In seeking for and determining the intent of the parties, it is just to conclude that they intended to produce such results as are the natural and necessary consequence of their acts; and if it can be seen that the natural and necessary consequence of the acts of Persse & Brooks, in transferring property to the corporation in the view they then had of their condition and resources, was to defraud, or hinder, or delay their creditors in collecting their debts, then they should be deemed to have done what they did do with that intent, and the transfers would be void as to their creditors . . . .

" It is a rule of law, that where personal property is sold or mortgaged, unless there be an immediate delivery of the property, followed by an actual and continued change of possession, the transaction shall be presumed to be fraudulent; and that

presumption shall be deemed conclusive, unless it be made to appear on the part of the purchaser or mortgagee, that the sale or mortgage was made in good faith, and without any intent to defraud the creditors of the vendor or mortgagor. If that is made to appear, then the presumption of fraud is removed.

"It is an equally fixed rule, that the property of a corporation in the possession of its officers is, in judgment of law, in the possession of the corporation itself.

"To apply these rules to the present case: if the personal property transferred continued in the actual possession of the firm of Persse & Brooks, without any thing in the manner of their dealing with it, or marking the nature and character of their possession to indicate that they ceased to hold and deal with it as owners, or that they held it as the property of others, then their subsequent possession would be conclusive evidence of fraud, unless the plaintiffs made it appear that the purchase by them was made in good faith, and that there was no intent to defraud the creditors of Persse & Brooks.

"This corporation could have employed any other of the firms in New York, being paper-dealers, to buy rags and material for it, and to sell its manufactured paper; so it might employ Persse & Brooks to do the same things, without thereby losing its title to property which it may prove it honestly acquired.

"If, after the 22d or 23d of September, 1857, Persse or Brooks bought whatever material they did buy as avowed agents of the corporation, and for its use, and if in selling paper they sold it as the plaintiff's paper, and in its name, and avowedly as its officers, and made the bills and receipted the payments in its name, such a possession of and dealing with the paper is not in law a possession by them as individuals, or by their firm as a firm, but is the possession of the corporation through its own officers and agents. . . .

"The defendant insists that Persse & Brooks were at the time insolvent, must have known it, and been conscious that their failure could not be long delayed; that a corporation was contrived to enable them to prosecute their business in its name; that the members of the firm of Persse & Brooks subscribed individually for the stock, when as individuals they had noth-

ing with which they could pay for it; that they took the stock in their individual names, and paid for it with the firm's property, valued at $450,000; that they also soon thereafter transferred other property of the firm, valued a $126,000, on a credit of 12 months, retaining nothing of substance with which to pay their debts; that the members of the firm elected themselves directors and officers of the corporation, Dudley Persse and Horace Brooks bargaining with themselves, and acting in the double capacity of members of the firm of Persse & Brooks and as officers of the corporation; and that nominally as such officers, but in truth on their own account, they continued the business precisely as they had previously done, without any one having any power or legal capacity to interfere with them or the business, or their manner of doing it, until their failure and assignment."

The counsel for the defendant requested the court to charge, among other things, that,

3. The conveyance of the property in Connecticut, in the individual names of the partners, was *per se* fraudulent and void as to the creditors of Persse & Brooks.

4. Such a conveyance, and taking such stock in the individual name was fraudulent and void as to the creditors of the firm of Persse & Brooks, even though it was done with an expectation and intention ultimately to pay the debts of the firm.

5. Such a transaction necessarily operated to hinder, delay, and defraud the creditors of the firm, and was void also upon that ground.

The court refused so to charge, and the defendant's counsel excepted.

The jury retired, and after a prolonged absence sent into court the following inquiry in writing, namely:

"Would an intent to delay without having an intention to defraud be sufficient cause for a verdict for the defendant?"

The court returned to the jury the following answer, namely:

"A transfer of property with intent to delay creditors, in order to be void, must be with intent to transfer it to prevent its being reached by ordinary legal process, or to postpone the period of time in which payment can be enforced by ordinary legal proceedings."

To which the counsel for the defendant duly excepted.

After a further absence the jury came into court, not having agreed upon their verdict.

Whereupon a juror arose and stated, that it was his opinion that they formed a corporation. It was done to delay payment to creditors. It was putting the creditors out of the regular course of law to collect their debts, by having to levy on stocks.

The court replied that the creditors could collect a debt as readily by levying on stock as on the property.

The juror then stated, I understand that, but whether it is putting the defendant out of the regular course, I want to know?

The court replied: "How can it put a man out of the regular course when one kind of property is substituted for another which can be sold. If valuable, the debt could be collected as well out of the stock as out of the land; if of no value, that is another thing.

"All I mean to say is, that when a man sells one piece of property, and takes some other property for it, and the property which he takes in exchange is just as open to process as that with which he parted; that of itself is not a delay within the meaning of the law such as would make the transaction void. It must be something which interferes, and is done for the purpose of interfering with a party's ordinary remedy by suit to collect his debt. With what intent it was done, is a matter for you to find. I merely state you the proposition that the stock was as open to seizure as the land."

To these further instructions of the court, and to each of them separately, the counsel for the defendant duly excepted.

The jury again retired and brought in a verdict in favor of the plaintiffs, and against the defendant, for the sum of $13,173.52.

The defendant's motion for a new trial having been denied, and judgment having been entered against him on the verdict, he now appealed.

*L. B. Woodruff*, for the defendant, appellant.—I. The proof of the act of incorporation was not competent.

Section 426 of the Code has no application to resolutions or private charters. The book offered did not purport to be a

volume of the laws of the State of Connecticut. The charter of a corporation is a contract made with the State, rather than a law of the State.

Hence the necessity, apart from express statute, of proving a charter, while courts take judicial notice of the laws of their own State.

II. The exceptions to the refusal to dismiss the complaint, and to the refusal to charge as requested, and to the charge given, are well taken. No sufficient organization of a corporation was proved.

III. The conversations of Horace Brooks, one of the parties alleged to have conspired with his copartners to defraud their creditors, had with third persons prior to the alleged transformation of the firm of Persse & Brooks into a corporation, were not competent evidence in favor of the plaintiff. His declarations of the motive and object of such a transformation were not admissible.

IV. The exceptions to admitting the statement of intent are insisted upon, notwithstanding the decision of the Court of Appeals in Seymour a. Wilson (14 *N. Y.*, 567).

The facts and circumstances attending the transaction are the proper evidence of the intent and purpose with which it was made.

The witness should not be permitted to decide the very question the jury are to determine.

V. Proof that the alleged corporation made profits during the first ten months, under the management of the alleged conspirators, did not tend to prove their good faith.

But if such evidence was proper, then it was competent to show that so soon as the company had exhausted the means of operating the mills which Persse & Brooks furnished them, by transferring to them property to the amount of $126,331.96, at twelve months' credit, they utterly failed to make any profits, and the stock became valueless.

VI. The exceptions arising on the rejection of testimony of Mickle are well taken.

VII. The statements of Brooks, while still in the possession of the property, and in its actual management and control, were also competent.

He was acting in the very business, and endeavoring to real-

ize the results of the fraudulent design; the act of incorporation was a shield, and he was working up the property for Persse & Brooks' benefit.

On the other hand, the conversations between the alleged fraudulent parties, conspiring together as the defendant insists, are not evidence in their own favor.

Declarations of an assignor or vendor, while he continues in the actual possession, are admissible, and this notwithstanding he is professing to act as clerk or agent. (Adams *a*. Davidson, 10 *N. Y.*, 309; Willies *a*. Farley, 3 *Car. & Payne*, 395; *Cow. & Hill Notes*, 4 ed., 327; Babb *a*. Clemson, 10 *S. & Rawle*, 419; S. C., 12 *Ib.*, 328; Clayton *a*. Anthony, 6 *Randolph*, 485; Wilbur *a*. Strickland, 1 *Rawle*, 458; Martin *a*. Reeves, 3 *Mart. Louis. R.*, *N. S.*, 22.)

When fraud, as against creditors, is alleged, the declarations of the assignor or vendor, and of all others concerned in the alleged fraud, are admissible. (Crary *a*. Sprague, 12 *Wend.*, 41; 1 *Greenleaf's Evid.*, § 111.)

VIII. The exceptions to the rejection of Persse's statements rest upon similar grounds.

So proof, that there was no change in the manner in which the business of the store was conducted, and no ostensible change, should have been received.

IX. The objection to the question to the witness Mickle, whether he worked " under the corporation" or not, should be sustained. It was a question to be decided on the whole evidence, not on the opinion of the witness as to his legal relations.

X. The other rulings excepted to were erroneous.

XI. The jury should have been instructed in conformity with the requests submitted by the defendant.

The conversion of the entire mass of copartnership property into stock of a corporation, and appropriating that stock to the individual members of the firm, destroying its copartnership character and its immediate and certain liability for copartnership debts, operated necessarily and *per se* to hinder creditors; it created an obstacle to the collection of their demands.

There had been no change of possession, and the continued possession and control by the members of the firm of Persse & Brooks is presumptive evidence of fraud.

The circumstance that they had themselves assumed to act

in the character of officers of the alleged corporation, does not alter the legal effect of the fact that they were still in actual possession.

XII. Those portions of the charge which were excepted to were erroneous.

And the instructions given to the jury on their return to the bar were erroneous and calculated to mislead.

In substance they amounted to this : that if the stock taken by the several members of the firm of Persse & Brooks in the alleged corporation could be levied upon, there was no delay, and could be no intent to delay ; and when to this was added that " the creditors could collect as readily by levying on stock as on the property," it substantially instructed the jury that the plaintiff was entitled to a verdict.

So the instruction that there must not only be an intent to interfere with the party's ordinary remedy by suit, but that the thing done must be something which does interfere, was erroneous.

A transfer with intent to hinder or delay creditors is void, whether the hindrance be effectual or not.

So also the transfer of the personal property in New York to a foreign corporation on a credit of twelve months, did hinder and delay.

XIII. There was nothing in the case to warrant the submission to the jury of the question whether, " although a charter was obtained and a company formed with intent to place the property of its contrivers beyond the reach of legal process," the corporation did not nevertheless buy whatever it bought " in the regular course of business honestly," and pay for it, and conduct its business solely for the interest of its stockholders ?"

The charge submitted this question to the jury.

The organization of the company, and the sale and delivery of the deed of the property, were simultaneous acts, as nearly as in the nature of the things was possible. The intent of the formation of the company, if found to be to cover up Persse & Brooks' property, was the intent of the conveyance—the latter was the immediate execution of the fraudulent intent.

A finding of the jury that the company was formed in order to cover up the property of Persse & Brooks, yet that the con-

veyance, which was immediate, and in a just sense a part of the same transaction, was a purchase in the regular course of business honestly made, would be set aside as against evidence.

It amounts in good sense and in law to a contradiction.

The minds that conceived the fraudulent intent, and the minds that conceived the idea of the sale, and that acted in accepting the conveyance, were the same, and the whole transaction was one.

The same minds acting in the matter, the simultaneous conveyance was necessarily and inevitably the carrying of the fraudulent intent into execution. In the absence of any evidence of a change of purpose, a verdict to the contrary should not be sustained, and such a question ought not to have been submitted to the jury.

XIV. The verdict was not warranted by the evidence.

*D. D. Field*, for the plaintiffs, respondents, reviewed at length the numerous exceptions taken by defendant, and argued that they were untenable.

BY THE COURT.*—BOSWORTH, Ch. J.—I. The act of the General Assembly of the State of Connecticut, incorporating the plaintiffs, is a law, within the meaning of that word as used in section 426 of the Code of Procedure. According to the legislative lexicology of the State of New York, every act of the Legislature, whether public or private, is a law within the meaning of the statutory provisions, as to the time it takes effect, and the manner of proving it. (1 *Rev. Stat.*, 157, 10–13; *Ib.*, 184, § 12; Duncan a. Duboys, 3 *J. C.*, 125.)

Every bill which has been passed by the Legislature, as provided by the constitution and statutes, and been approved and signed by the governor, or which he shall not return with objections within the prescribed period, or which, if returned with objections, shall be agreed to by the requisite number of each house, thereupon becomes a law, within the meaning of section 426 of the Code, whether it affects all the people of the State alike, or merely creates a body politic.

II. The court charged the jury that, " If you shall find the al-

---

* Present, BOSWORTH, Ch. J., and MONCRIEF and WHITE, JJ.

legations of an intent to hinder, delay, or defraud the creditors of Persse & Brooks to be unproved, then there is no such defect or vice in the proceedings taken to organize the corporation, as creates any answer to the plaintiff's action;" that " if the plaintiff's right to recover in this action depended solely on the question, whether in organizing the company there has been such a compliance with the requirements of the charter, as confers upon the corporation a capacity to acquire and hold property, and to sue and be sued, the plaintiff would be entitled to your verdict."

The defendant excepted to the portion of the charge last quoted, but not to the part first cited, and requested the court to charge that " the stock of the corporation was never subscribed for and taken up, so as to satisfy the conditions of the charter, and so the corporation never had a legal existence, entitling it to purchase property;" and also, that " upon the proofs as to the taking of stock, and compliance with the conditions of the charter, the plaintiff has no right to maintain this action." The court refused to charge conformably to either of these requests, and the defendant excepted.

By the first section of the act, D. Persse, H. Brooks, and D. H. Magie, with all others who are or shall thereafter be associated with them, " be, and hereby are, with their successors and assigns, made and established a body politic and corporate."

By the third section, the first meeting of the corporation was to be called by a person or persons appointed for that purpose by the corporators named in the first section, and upon such notice thereof as they " shall deem reasonable and proper."

The second section declares, that " said corporation may organize, go into operation, and commence business, whenever, and as soon as three hundred thousand dollars of said stock shall be taken up and subscribed for."

A meeting was called and held at the place designated, on the 1st of August, 1857; subscriptions to the amount of $450,000 were made; officers were elected, and a certificate of the fact of such organization was filed forthwith with the town clerk of the town of Windsor Locks, and with the secretary of State on the 3d of August, 1857.

The words " taken up," found in the concluding sentence of section two, are not used as synonymous with *paid for;* for by

section seven, the subscriptions might be called in by instalments.

A subscription for $300,000 of the stock, the election of officers, and filing of the certificate, would complete an organization which authorized the corporation to commence business. (Schenectady and Saratoga Plankroad Co. *a.* Thatcher, 1 *Kern.*, 102.)

It has since continued to transact business, as a corporation, in the State of Connecticut. At least the evidence tends to show that it has, and no contrary inference from the evidence is admissible.

If the corporators so abused their powers in respect of the notice given of the first meeting, or by reason of any informality in the proceedings of that meeting, or by reason of taking property instead of money in payment of the subscriptions for stock then made, as thereby to make a cause of forfeiture, the matter cannot be taken advantage of collaterally or incidentally, or on any other mode than by a direct proceeding against the corporation for that purpose. And such a proceeding must be instituted in the State which created the corporation, and in which it is located. (Trustees of Vernon *a.* Hills, 6 *Cow.*, 23; Slee *a.* Bloom, 5 *Johns. Ch. R.*, 379, 380; Chester Glass Co. *a.* Dewey, 16 *Mass.*, 94; Willard's Real Estate, 101, 102.)

Brouwer *a.* Appleby (1 *Sandf.*, 158) is an authority that the alleged defects could not be raised even against a domestic corporation in a suit against one dealing with it as a corporation. It would seem to be equally clear, that a trespasser, sued for wrongfully taking property from its possession, would not be in a more favorable position. And the defendant must be viewed as appearing in the latter character, in determining the accuracy of the instruction.

Upon the question, whether the creation of the corporation was a fraudulent scheme to shield the property of Persse & Brooks from their creditors, all the circumstances proved in relation to the manner of its organization were allowed to go to the jury, and some of the more prominent of them were specially called to their attention in the charge given.

With reference to the part of the charge above excepted to, and the request to charge, see also The Bank of Niagara *a.* Johnson (8 *Wend.*, 645); The People *a.* The President, &c., of

the Manhattan Co. (9 *Ib.*, 351, 382) ; United States Bank *a.* Stearns (15 *Ib.*, 314); Methodist Episcopal Union Church *a.* Pickett (19 *N. Y.*, 482) ; Robinson *a.* The Governors of the London Hospital (21 *Eng. L. & Eq. R.*, 371).

The exception to this part of the charge is not well. taken.

If the views already expressed, in relation to the sufficiency of the proof of the act of incorporation, and the effect of the acts done to organize the company, are correct, it was not error to refuse to dismiss the complaint, when the plaintiffs rested, unless the third, fourth, fifth, and sixth requests to charge, or one of them, should have been complied with. Those requests, and the matter of the charge in respect to. them, will be considered in connection with the exceptions to the charge not already considered.

III. The third to the eleventh of the appellant's points, inclusive, relate to exceptions admitting or rejecting evidence.

To determine the accuracy of some of these rulings, it is important to bear in mind the theory of the defence, and the evidence that had been given when the question arose; and as to others, the line of examination, which had been previously pursued.

The theory of the defence .sought to be established was, that the incorporation of the plaintiffs was a scheme devised by Persse & Brooks to convert their property into a form which would hinder, delay, or defraud their creditors, and with that intent, and, by which they would be enabled to control it as officers and agents of such corporation; and that the transfers made in August and September were made with that intent, and necessarily had that effect.

Evidence of the acts of the assignor of property who continues in actual possession of it after the transfer, respecting his manner of using or disposing of it, tending to show that he is using and disposing of it as if it were his own, is admissible upon the question of the *bona fides* of the transfer.

So, too, are his declarations relating to its control and the disposition of it, while he continues in the actual possession, where such declarations, in connection with the use or disposition which they authorize, tend to establish the same result. (Adams *a.* Davidson, 10 *N. Y.*, 309.)

Such a rule does not conflict with the statutory provision,

that "in suits by or against an aggregate corporation, the admission of any member thereof not named on the record as a party to such suit, shall not be received as evidence against such corporation, unless such admission was made concerning some transaction, in which such member was the authorized agent of such corporation." (2 *Rev. Stat.*, 407, § 80.)

Nor is it an answer, that the person whose declarations are sought to be proved, in the present case, was in possession as an officer of a corporation, and that his possession is its possession, and the case does not, therefore, fall within the rule. That is objecting to the exclusion of the offered evidence, the very fact in dispute, and is no more an answer than if his assignee were a natural person. When it appears that his possession is that of an officer, and *bona fide* as such, the question is solved, in so far as its solution depends merely upon the fact of a continued possession. But whether he uses it, and deals in regard to it, as if it were his own, is an entirely different matter.

Booth *a.* Bunce *et al.* (24 *N. Y.*, 592) is an authority for the proposition, that it is open to the defendant to establish his defence if he can; and it would seem that the same rules of evidence must be applied, as if the assignee or vendee were a natural person; having at all times a due regard for the proposition that a corporation can, generally, act only by the agency of natural persons.

We think it quite clear, therefore, that it was competent for the defendant to prove that Horace Brooks, and Mr. Forrest, the assignee of his firm, immediately after the assignment was executed, went to Windsor Locks; and that Forrest, in the presence of Mr. Barnes, and of H. Brooks, and T. B. Persse, gave the directions and made the statement offered to be proved; and that such instruction was obeyed. Horace Brooks was the president of the plaintiff; was the principal actor in taking the steps pursued to organize the company, and seems substantially to have been the officer most influential in conducting its operations. The rejected evidence, if it came up to the offer, would show that even after the assignment he subjected it to the control of the assignee, as property transferred by the assignment.

Whether such proof as was offered could have been made, or would have been credited if given, are not questions now

before the court. We must assume it would have been given but for the ruling excepted to, and may have been fully credited.

For the same reason, evidence of the declarations of H. Brooks, offered to be proved by Zebley, should have been admitted, if made while he was in the possession of, and controlling the property, now claimed to belong to the plaintiff.

So, too, I think the evidence offered to be given by J. H. Benedict should have been received. The evidence was to show what Mr. Persse said, while negotiating for the purchase of stock to be manufactured into paper, at the plaintiff's mills. Though the offer does not specify the statements alleged to have been made, yet it should not be now assumed that it was overruled for that cause; especially as it appears that offered evidence, in all respects very specific in respect to the facts proposed to be proved, was excluded.

It is hardly necessary to state, by way of precaution, that all declarations which either Persse or Brooks may have made are not admissible, merely because they made them and they relate to the business and property now claimed by the plaintiff to be its own business and property, and were made while in possession of the property and conducting the business. To be admissible, they must have been relevant to the issue.

Whether Benedict observed any change, during the year 1857, in the manner of doing business, or the appearance of the store, I do not deem admissible. If he transacted business with Persse & Brooks during that time, and if they then transacted in their own names the business, which the plaintiff now claims was its business; or if he saw that the signs on the store, or other indicia of ownership continued unchanged, he could so testify.

Before the exceptions were taken to H. Brooks' testifying to the fact that, anterior to the creating of the corporation, he conversed on the subject of forming it; and what was his reason for forming it; and whether or not there was any motive to defraud creditors; he had stated without objection, that the first design of forming it was talked of between Persse and himself; and he had talked with Mr. Dexter about it; that he had spoken to a great many people on the subject; and in the parlor of the Nassau Bank among the directors. He had also

been examined, by the defendant (on a cross-examination), as to the meeting to organize the corporation; the call of that meeting, and how made; as to the transfers of property made on the 1st of August and 1st of September, and as to the conduct of Persse & Brooks in regard to the property and the management of the business down to a period subsequent to their failure.

The evidence given did not tend to show any very general or circulated notice of holding the first meeting; and this, in connection with the fact that Persse & Brooks continued the manufacturing business on their own account, down to the 1st of September, 1857, furnished the basis for an argument that the fact of the organization was not generally known nor designed to be; and that their continuance of the business for a month subsequently, was calculated, if not designed, to prevent any inference being generally drawn that they had ceased to be owners of the mills.

As pertinent to that question, it appeared to me at the trial to be proper, and does still, to admit evidence that the formation of the company was publicly spoken of by them, and to persons with whom they were dealing.

And as the evidence then given, had there been no other, would have required the submission to the jury whether the plaintiffs had been incorporated as a cover and shield, to defraud, hinder, or delay the creditors of the firm of Persse & Brooks,—and as such evidence had been given by H. Brooks himself,—the question whether this was done, and the property transferred, with a fraudulent intent, was one proper to be put on a re-examination (which as to this matter was a cross-examination, under the decision in Seymour *a.* Wilson, 14 *N. Y.*, 567).

If that general question, under such circumstances, is competent and proper for the consideration of the jury, it is difficult to perceive any objection to his stating what the actual motive or intent was. He is as competent to know and to state that, as to affirm generally that his intent was honest and not fraudulent. If the motives or reasons assigned evince an honest intent, the statement of them is but specifying the reasons for his acts, which the answer to the general question of intent characterizes as being an honest intent. And if he may testify that his intent was honest, or, as an equivalent thing (when

showing an honest intent), may state the particular reasons which induced the act, it would seem to follow that he may also testify that he communicated these reasons to his creditors and others before the act of incorporation was applied for.

It may be conceded that such matters would not be competent evidence in the first instance, and yet may be upon the question whether the organization was designedly concealed at the time it took place, or whether the act of incorporation was procured and the transfers made with an actual intent to defraud, in answer to evidence by the same witness of acts on his part tending in any degree to justify an inference of such an intent to conceal and defraud.

H. Brooks was permitted to testify, that between the 1st of September, 1857, and the 1st of July, 1858, the corporation made profits; and that there was a very great panic in the market, beginning in July or August, and lasting several months; and the defendant objected and excepted to the decision admitting the evidence.

The first item of evidence, if admissible at all, can only be so because it bears on the question whether Persse & Brooks obtained the charter in contemplation of insolvency, and with a view to their immediate failure. The second item of evidence bears upon the question of the cause of their failure ; and whether it resulted from an actually embarrassed condition of which they were conscious, and against the consequences of which they ought to provide when they organized the company, or was induced wholly or in part from causes not then within their contemplation.

But it does not follow that the admission or admissibility of such evidence makes it competent to inquire whether, up to the time of the trial (March, 1862), profits had been made. Merchandise of the plaintiff, or claimed to be such, had been seized in March, 1858, by creditors of Persse & Brooks, amounting in value to some $11,000 to $12,000, on an allegation that the formation of the corporation was a cheat and a fraud, and that the property it claimed to own was liable to be seized on execution issued on judgments in favor of the creditors of Persse & Brooks, and had been sold notwithstanding notice of the plaintiff's claim of ownership. Such acts would necessarily interfere with the successful transaction of the plain-

tiff's business, tend to impair its credit, and would leave the jury without any reasonably certain means of determining what would have been the result of the business if it had not been interfered with.

The evidence offered and rejected neither furnishes any evidence of an original fraudulent intent, nor impairs in any degree whatever weight the rebutting evidence, as to making profits up to July, 1858, may justly deserve.

The defendant was permitted to inquire whether profits were made within the period of which H. Brooks testified; and the evidence excluded was, whether profits had been made up to the time of the trial. It was not proposed to inquire with reference to any intermediate point of time; and if that was desired it should have been so stated, that it might have been considered whether, upon any grounds that might have been suggested, such an inquiry would have been pertinent. But we think that all evidence in respect to the fact of making profits up to July, 1858, or sustaining losses subsequently, should have been excluded. That the corporation made profits, does not tend to show that its organization was without fraud; that it suffered losses, does not tend to show that its organization was fraudulent.

The exception to the ruling that H. Brooks may state any thing which the parties said in negotiating the agreement by parol, and which of itself constituted the contract, is not tenable. Such evidence was in its nature clearly competent; and it was a matter resting in the discretion of the court, in its view of what was proper to elicit the whole truth, to permit the inquiry, although the witness had previously been examined to the same matter.

The question to Mickle, "Was you superintendent of the works under the corporation?" was clearly competent. This was put on his cross-examination. He had testified on his direct examination that he was in the employment of the firm of Persse & Brooks, "as superintendent of the manufacture of paper at Windsor Lock, from the spring of 1855 to the end of October, 1857."

This fact, if true, was in itself very material, and tended to show that the manufacture of paper was continued by the firm, under the superintendence of a person employed by the firm,

to the end of October, 1857. It was clearly competent for the plaintiffs to show, if they could, that from September 1, 1857, he acted as the agent of the corporation.

The defendant asked H. R. Dixon, who was examined as an expert in the science of book-keeping, this question :

"Do the books (of Persse & Brooks) show whether, on the 30th of June, 1857, the firm was insolvent ?"

The court excluded the question, and the defendant excepted.

It was competent to show the entries in the books in respect to the firm's assets and liabilities, and it was for the jury to determine upon the whole evidence whether the firm was insolvent. The witness was asked to determine the question upon such evidence as the book-entries furnished, instead of pointing out the entries and reading them to the jury. This exception is untenable.

The defendant also excepted to the exclusion of evidence of the contents of an entry made in the firm's books in October, 1857. At this time the books were under the control of the firm's assignee and his agents, and the entries were not the acts of Persse & Brooks.

Any entries made by Brooks himself, the defendant was permitted to prove. This ruling is free from objection.

The questions as to what the paper of the firm, without their knowledge, was offered to be sold for in the spring or summer of 1857, or whether Mr. Bennett was induced to withdraw his funds in their hands in consequence of an offer to sell him the firm's paper made in March, 1857, were properly overruled. The evidence, if given, would not tend to show that the firm contemplated insolvency as probable or possible, or had disposed of its property to the plaintiff fraudulently.

Nor do I think evidence should have been received of the application which Mr. Bennett made of the $20,000, which he received from the firm.

The fact that he or any other person called for payment, in whole or in part, of money lent on interest, and payable at call, raises no inference that the debtor was insolvent, or embarrassed, or considered himself to be so, and laid no foundation for evidence of the use which the creditor made of the money, on receiving it.

I do not see any good objection to proof of the manner in

which the transactions between Bennett and the firm were finally closed. If any of the testimony on behalf of the defendant in relation to these transactions can be supposed to furnish any evidence of the fraudulent intent imputed to Persse & Brooks, the whole truth in relation to the true character of these transactions would seem to be pertinent.

A short answer to the exceptions is, that in the answer to the question, " Were any papers exchanged between you and any other person in reference to that payment?" and in answer to the further question, " Was the final settlement made between you and Seymour, and Persse & Brooks, and Forrest or Mr. Eaton representing them?" nothing was said, of the slightest consequence, or which by any probability could have had any influence on the verdict.

The whole evidence of the witness, according to my view of it, renders the questions admissible, as a reasonable cross-examination.

The question put to Zebley, whether he knew from Persse & Brooks, that the notes made by them in July or August, 1857, were issued by them to be sold, should not have been overruled, if such knowledge was acquired before the transfers made by them of the property in question. It would bear on the question of their then opinion of their financial condition, but might be entitled to but little weight, if the rates at which a sale was authorized were such as were paid for the paper of houses in good credit.

If made after the transfers, they would be declarations in no way characterizing their possession of the transferred property, and should not be admitted against the plaintiffs to affect a title they had previously acquired.

The defendant, without objection, was permitted to examine Messrs. F. Bacon and C. S. Delavan, as to the general credit of Persse & Brooks, but was not allowed to prove "what their (Persse & Brooks') paper would sell for in the market," or that the notes of the firm were brought into Delavan's office, and offered for sale by street brokers; or whether "the fact that the paper of a house is in the hands of street brokers frequently for sale, affects the character of that house;" and he excepted to the decisions excluding such evidence.

I think the evidence is too remote, and does not legitimately

tend to show either that the firm was embarrassed when the corporation was organized, or that they then contemplated a failure. The fact that the paper was in the hands of street brokers, *prima facie*, tends rather to show the wants of the holder than of the makers of it.

Delavan was out of the country from the 17th of May to the 5th of October, 1857, and if the question related to a period later than the 5th of October, the offered evidence would clearly be inadmissible.

It was not proposed to show that the firm knew of the suggested sales, or offers to sell, or had any difficulty in procuring on credit any amount it desired in its operations.

The declarations of Persse & Brooks, whether oral, or in the form of a sworn answer, made February 13, 1858, to the effect that the notes therein mentioned were made by the firm to raise money, and were discounted at usurious rates, I deem inadmissible. The plaintiffs' title cannot be affected by mere declarations made by their vendors, subsequent to their purchase, when not made in relation to the transferred property at the time in their possession, or in any way qualifying such possession.

None other of the exceptions taken to the admission or rejection of evidence are noticed in the appellant's points.

IV. It only remains to consider the exceptions to refusals to charge as requested, and to the charge made. The first and second requests to charge have already been disposed of; the third, fourth, and fifth requests relate to the legal effect of the transfers made to the corporation, and taking stock in the individual names of the partners.

I think the charge made in answer to these requests, was a correct exposition of the law. The mere fact that partnership property is transferred for other property, and the substituted property transferred to the members of the firm individually, is not *per se* fraudulent, nor conclusive evidence of an intent to hinder or delay the creditors of the firm in the collection of their debts. If the substituted property is as valuable as that sold, is as accessible to process, and can be as readily converted into money, by judicial proceedings, the transaction does not, of itself and alone, either in fact hinder or delay, or furnish conclusive evidence of an intent to hinder or delay creditors, or render the transfer *per se* fraudulent and void.

Persse & Brooks Paper-works *a.* Willett.

The fact that title to the substituted property was taken by the members of the firm in severalty, instead of the firm's name, may be an important circumstance, if there be any other evidence tending to show a fraudulent intent. But if there be no evidence of a fraudulent intent, except such as is furnished by the mere fact of a transfer of a firm's property, and the division in form, among the partners, of property taken in exchange, the transaction is not *per se* fraudulent.

If the firm's remaining assets had been abundantly sufficient to satisfy all its liabilities as they matured, I cannot think that a transfer of property of the value of that in question, and taking the stock of a corporation therefor, in which corporation the transferred property was converted into capital, would suggest the idea, that there could possibly be in the transaction any evidence of an intent to hinder, delay, or defraud.

If this be so, then it was correct to refuse to give the instructions sought, and the charge, as made, was just and proper.

Because the requests affirm, that the naked fact of the transfer and taking the stock in the individual names of the partners was fraudulent.

That it was important and material, in connection with the other evidence, and entitled to be fully weighed by the jury in determining the question of an actual fraudulent intent, was pressed upon them by counsel, and it is among the leading facts relied on as evidence of frauds, which the court specially called to their attention.

And in this connection, it is appropriate to advert to the colloquy between the court and a juror, when the jury returned into court without having agreed on a verdict.

The only remark which I deem open to criticism, is that, "It must be something which interferes, *and* is done for the purpose of interfering with a party's ordinary remedy by suit to collect his debt."

Substituting *or* for *and*, and the sentence would be unobjectionable. The next sentence indicates that the court intended to so express itself. And the concluding sentence corroborates this view.

If there be nothing in the nature of the property taken in exchange, which would cause a delay in converting it by judi-

cial proceedings, or in creating a lien upon it thereby, the mere fact of the exchange would not furnish evidence of an intent to hinder or delay.

There may be a transfer with intent to hinder or delay, when the transaction itself would not have any such legal effect. And when such an intent is proved, the transfer is void, though the substituted property is as valuable, and as convertible by judicial proceedings as that given for it.

But when such a transfer is shown to have been made with intent to hinder or delay, the intent will be established by other evidence than the naked fact of a mere exchange of property.

V. The sixth and seventh requests to charge were properly overruled. The sixth assumes that it was a necessary effect of these transfers "to hinder, delay, and defraud their creditors." This fact was one for the jury to determine on the whole evidence. The jury were instructed that Persse & Brooks must be deemed to have "intended to produce such results as are the natural and necessary consequence of their acts; and if it can be seen that the natural and necessary consequence of the acts of Persse & Brooks in transferring property to the corporation, in the view they then had of their condition and resources, was to defraud, or hinder, or delay their creditors in collecting their debts, then they should be deemed to have done what they did do, with that intent, and the transfers would be void as to their creditors."

The request was erroneous, because it assumed as an established fact, a question of fact which was a matter of controversy, and in regard to which it was the exclusive province of the jury to determine whether it existed or not.

VI. The seventh request was also properly overruled. That imports, that though there was no fraudulent intent in organizing the corporation, yet a transfer to it of property by Persse & Brooks, and such possession of it as the lawful officers of the corporation would necessarily have in the proper performance of their official duties, would be presumptive evidence of a fraudulent intent, though they were in fact officers, and professed to hold and control it in that capacity, and did no act impeaching the truthfulness of their professions, or casting a suspicion upon the transaction beyond such as is justified by the fact of such a possession.

I think the charge, on this branch of the case, presented it accurately and fully to the jury.

VII. Our attention is called to a portion of the charge to which no exception was taken at the trial, and which, it is now urged, submitted to the jury a question which the case did not present, and in a manner calculated to mislead.

It is not urged, as I understand the argument, that the proposition is not sound as an abstract one. The court stated to the jury the requests to charge presented by either party, and the views of the court in regard to their accuracy as legal propositions.

The court had already informed the jury, that as Persse & Brooks "acted as well for the corporation in taking the transfers as for themselves in making them, it follows that if they were actuated with this fraudulent intent, the plaintiffs had notice of it, and cannot recover in this suit."

After stating the rule of law, the stating of which is now complained of, the court further said that, if the corporation was formed, and the transfers made with the intent alleged, "then the title is invalidated by transactions between Persse & Brooks and the corporation, had after its organization."

The full pertinency of this part of the charge cannot be so clearly seen as it would be, if the requests to charge were in the case. The words above quoted are there contained in one of the plaintiffs' requests, and the charge given was adverse to them.

I cannot think that counsel or the jury understood the judge to submit to the jury to find whether the transfers of the property may not have been honestly made, and therefore valid, even though they should find that the charter was obtained and the company organized with the fraudulent intent imputed. If there were no error other than that suggested in stating to the jury the legal proposition to which this objection is made, I should be quite clear that the judgment should be affirmed.

But there are errors, before stated, which entitle the defendant to an order reversing the judgment, and to a new trial, with costs to abide the event.

Ordered accordingly.